IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GLORIA ESTHER QUINONES PRATTS[1]  :  CIVIL ACTION
ON BEHALF OF J.S.Q., A MINOR     :
                                       :
      v.                                 :
                                       :
KILOLO KIJAKAZI,[2] Acting         :
Commissioner of Social Security    :  NO. 20-3825

**<u>MEMORANDUM AND ORDER</u>**

ELIZABETH T. HEY, U.S.M.J.                              January 25, 2023

      This action was brought pursuant to 42 U.S.C. § 405(g) to review the final

decision of the Commissioner of Social Security ("Commissioner" or "Defendant"),

denying the application filed by Gloria Esther Quinones Pratts on behalf of her minor son

J.S.Q. ("Plaintiff"), for supplemental social security income ("SSI") under Title XVI of

the Social Security Act.  For the reasons that follow, I conclude that the decision of the

Administrative Law Judge ("ALJ") is supported by substantial evidence and affirm.

**I.**     **<u>PROCEDURAL HISTORY</u>**

      Plaintiff was less than two years of age when his mother protectively filed an

application for SSI on May 5, 2017.  Tr. at 72, 156-64.  The application was denied, <u>id.</u> at

---

[1]Plaintiff's mother's name appears in several forms in the record, including different spellings in each of the parties' briefs and on the docket.  I utilize the spelling of her name as it appears in her own signature, and direct that the docket be changed to reflect the correct spelling.  Tr. at 206.

[2]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi should be substituted for the former Commissioner of Social Security, Andrew Saul, as the defendant in this action.  No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

83-86, and Plaintiff requested an administrative hearing, <u>id.</u> at 87, which occurred on

December 11, 2018.  <u>Id.</u> at 55-71.  In a decision dated March 26, 2019, the ALJ found

that Plaintiff was not disabled.  <u>Id.</u> at 15-29.  The Appeals Council denied Plaintiff's

request for review, <u>id.</u> at 1-3, making the ALJ's March 26, 2019 decision the final

decision of the Commissioner.  20 C.F.R. § 416.1481.

Plaintiff commenced this action on July 20, 2020, and filed a Brief and Statement

of Issues in Support of Request for Review on May 22, 2022.  <u>See</u> Docs. 1, 24.

Defendant filed a response on June 17, 2022.  <u>See</u> Docs. 25.[3]

## II.   <u>LEGAL STANDARDS</u>

The court's role on judicial review is to determine whether the Commissioner's

decision is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3);

<u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360

(3d Cir. 1999).  Therefore, the issue in this case is whether there is substantial evidence to

support the Commissioner's conclusion that Plaintiff is not disabled.  Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate," and

must be "more than a mere scintilla."  <u>Burnett v. Comm'r of Soc. Sec.</u>, 220 F.3d 112, 118

(3d Cir. 2000) (quoting <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d Cir.)).  The court has

_____

[3]The Commissioner consented to magistrate judge jurisdiction pursuant to 28
U.S.C. § 636(c), <u>see</u> Standing Order, In RE:  Direct Assignment of Social Security
Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018), and Plaintiff
is deemed to have consented.  Doc. 6.  Adjudication of the case was delayed by
Defendant's requests for extensions of time to file the certified administrative record
necessitated by transcription difficulties caused by the Covid-19 pandemic, Docs. 11 &
13, and Plaintiff's counsel's repeated failure to abide by court-imposed deadlines to file a
Brief and Statement of Issues.  Docs. 16-22.

plenary review of legal issues.  Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431

(3d Cir. 1999) (citing 42 U.S.C. § 405(g)).

In the context of determining eligibility for child benefits, the Commissioner

employs a three-step sequential evaluation that examines (1) whether the child has

engaged in substantial gainful activity, (2) whether the child has a medically

determinable severe impairment(s), and (3) whether the impairment(s) meet, medically

equal, or functionally equal the Listings of Impairments.  20 C.F.R. § 416.924(a).  In

determining whether the impairment(s) meet or medically equal a Listing, there must be

medical findings that meet or equal in severity all of the criteria for the Listing.  See

Sullivan v. Zebley, 493 U.S. 521, 531 (1989).  In determining whether the impairment(s)

functionally equals a Listing, the ALJ must assess the claimant's functioning in six

domains: (1) acquiring and using information, (2) attending and completing tasks,

(3) interacting and relating with others, (4) moving about and manipulating objects,

(5) caring for yourself, and (6) health and physical well-being.  20 C.F.R.

§ 416.926a(b)(1)(i)-(vi).

To functionally equal a Listing, the claimant's impairment or combination of

impairments must result in "marked" limitations in two domains of functioning or an

"extreme" limitation in one domain.  20 C.F.R. § 416.926a(d).  Social security

regulations define a "marked" limitation in a domain as one that interferes "seriously"

with Plaintiff's ability to independently initiate, sustain or complete activities, and as

equivalent to "the functioning we would expect to find on standardized testing with

scores that are at least two, but less than three, standard deviations from the mean."  Id.

§ 416.926a(e)(2).  An "extreme" limitation is one that interferes "very seriously" with Plaintiff's ability to independently initiate, sustain, or complete activities, and is equivalent to at least three standard deviations below the mean on standardized testing. Id. § 416.926a(e)(3).

## III.    DISCUSSION

Plaintiff was born in Puerto Rico on July 25, 2015, and thus was less than two years of age when his application was filed (May 5, 2017), and was three years and eight months at the time of the unfavorable ALJ decision under review (March 26, 2019).  Tr. at 301, 307.  According to the Disability Report prepared in connection with his application, he speaks Spanish and cannot speak, read, or understand English, id. at 190, although his mother testified that he is learning both languages.  Id. at 64.  He lives with his biological mother and two older brothers.  Id. at 61, 279.[4]  He has no history of substantial gainful activity.  Id. at 73, 169.  Plaintiff's application lists his disabling conditions as chronic asthma, dermatitis, eczema, and speech problems, id. at 191, and he has also been diagnosed with attention deficit hyperactivity disorder ("ADHD").  Id. at 76, 283, 286.

### A.    ALJ's Findings and Plaintiff's Claims

In the March 26, 2019 decision under review, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since May 5, 2017, his application

---

[4]At the time of the December 11, 2018 administrative hearing, Plaintiff's older brothers were eight and nine years of age.  Tr. at 61.  In July 2017, Plaintiff's mother told a medical examiner that he resided with her and the biological father, two older brothers, and a maternal uncle.  Id. at 279.

date.  Tr. at 18.  At step two, the ALJ found that Plaintiff suffers from the severe

impairments of ADHD, asthma, and speech and language impairments.  Id.  At step three,

the ALJ found that Plaintiff does not have an impairment or combination of impairments

that meets or medically equals the Listings, specifically Listings 103.03 (asthma), 111.09

(communication impairments) and 112.11 (neurodevelopmental disorders).  Id. at 18-19.

The ALJ also found that Plaintiff does not have an impairment or combination of

impairments that functionally equals a Listing, concluding that he has no limitation in the

domain of moving about and manipulating objects and less than marked limitation in the

other five domains of functioning.  Id. at 19-29.  The ALJ thus concluded that Plaintiff

has not been disabled since his application date.  Id. at 29.

Plaintiff presents two claims based on the Listings, arguing that the ALJ

erroneously failed to find (1) that Plaintiff's speech impairment satisfies Listing 111.09

and (2) that his ADHD satisfies Listing 112.11.  Doc. 24.  Defendant counters that the

ALJ's decision is supported by substantial evidence.  Doc. 25.

### B.  Summary of the Medical and Preschool Evidence

On December 16, 2016, Plaintiff received treatment at Delaware Valley

Community Health for a cough that began two days earlier.  Tr. at 243.  Plaintiff's

mother also expressed concern about Plaintiff's "speech delay."  Id.  Examination yielded

normal results and a diagnosis of acute upper respiratory infection and mild intermittent

asthma without complication by history.  Id. at 244-45.  The provider prescribed a small

mask nebulizer system containing an albuterol sulfate solution, and a Ventolin aerosol inhaler, both as needed for wheezing or shortness of breath.  Id. at 245.[5]

On January 30, 2017, Plaintiff presented for a wellness examination at 18 months of age.  Tr. at 237, 344.  Plaintiff passed all developmental stages for his age and exhibited normal physical development and age-appropriate behavior.  Id. at 345, 347. The provider diagnosed Plaintiff with mild intermittent asthma without complication and a speech delay, and referred him to speech therapy and an audiology evaluation.  Id. at 348.

On May 24, 2017, during a visit to the Esperanza Health Center ("Esperanza"), Plaintiff's mother reported that Plaintiff spoke about three or four words and pointed to things he wanted rather than use words.  Tr. at 353.  Upon examination, Plaintiff exhibited no obvious delays in gross or fine motor, language, or social development, id. at 356, and the examiner noted that Plaintiff passed his newborn hearing screening.  Id. at 355.  The examiner also noted that Plaintiff "is saying a few words and makes very good eye contact," and that he wanted to share his crackers during the exam.  Id. at 350.  He failed the Modified Checklist for Autism in Toddlers ("MCHAT") questionnaire, resulting in a referral to Child Link and audiology for further evaluation.  Id.  His mother reported behavior problems at daycare such as hitting other children and throwing toys. Id. at 354.

---

[5]Ventolin (generic albuterol) is a bronchodilator used to treat and prevent bronchospasm.  See https://www.drugs.com/ventolin.html  (last visited Jan. 10, 2023).

On July 24, 2017, Amy Wells, Psy.D., performed a pediatric mental status examination of Plaintiff in the presence of Plaintiff's parents and with the assistance of a staff Spanish-language interpreter.  Tr. at 279-83.  It was noted that Autism Spectrum Disorder had been ruled out by St. Christopher's Hospital.  Id. at 279.  Plaintiff's mother stated that Plaintiff had a good relationship with his parents and other adult authority figures, a fair relationship with his siblings, and difficulty with same-aged peers, and that he will sometimes bite or hit his head when he is frustrated or does not get what he wants.  Id. at 280, 282.  She also stated that Plaintiff fidgets, squirms and has a hard time sitting still, and that those behaviors were not seen during the evaluation because Plaintiff was sick.  Id. at 280.[6]  Dr. Wells indicated that Plaintiff sat up at around six months of age, said his first words around eight months, stood around ten months, and was walking by the end of ten months.  Id.  Plaintiff's mother reported that Plaintiff could walk up and down stairs holding onto a handrail, feed himself, and drink independently from a cup and use a spoon.  Id. at 281, 282.

Upon mental status examination, Dr. Wells noted that Plaintiff did not speak and appeared groggy, which his mother attributed to Plaintiff having a fever, and that he was somewhat playful, made eye contact, and smiled while playing.  Tr. at 281.  Plaintiff's mother reported that Plaintiff knew about ten words and was hard to understand because he has a "tendency to mumble" and also "to speak very loudly . . . and scream at times."  Id.  Dr. Wells opined that Plaintiff has age-appropriate receptive language and that his

---

[6]Earlier that day Plaintiff had been diagnosed with a fever and strep throat.  Tr. at 368.

expressive language appeared to be below age expectations.  Id. at 282.  Plaintiff

exhibited coherent and goal-directed thought processes, appropriate affect, and euthymic

mood, appeared to have intact attention and concentration, responded to his name and

likely had average cognitive functioning.  Id.  Dr. Wells diagnosed Plaintiff with mild

ADHD and a moderate speech disorder, and opined that his prognosis was fair.  Id. at

283.

Dr. Wells also completed a medical source statement of Plaintiff's functional

abilities, in which the doctor opined that Plaintiff had no more than moderate limitations

in the six domains of functioning.  Tr. at 284-87.  Specifically, the doctor opined that

Plaintiff had moderate difficulty acquiring and using information and interacting and

relating with others, and mild difficulty attending and completing tasks and caring for

self.  Id. at 284-86.[7]

Also on July 24, 2017, Plaintiff attended a pediatric physical consultative

examination with Andrea Woll, D.O.  Tr. at 290.  Plaintiff was 33 ½ inches tall (between

25th and 50th percentile) and weighed 24 pounds (25th percentile), with a head

circumference of 18 ¼ inches (10th percentile.).  Id. at 292.  Dr. Woll noted that Plaintiff

did not speak during the exam and that "[a]ll he did was cry."  Id.  He exhibited age-

appropriate behavior, related in an age-appropriate way, and appeared to have a normal

_____

[7]For the domain of health and physical well-being, Dr. Wells identified Plaintiff's
asthma but did not state a level of functional impairment.  Tr. at 287.  For the domain of
moving about and manipulating objects, the doctor's short notation is illegible but does
not appear to state a level of impairment.  Id. at 286.

attention span.  Id.  All other aspects of Plaintiff's physical examination were normal and appropriate for age.  Id. at 293.

In an accompanying medical source statement of Plaintiff's functional abilities, Dr. Woll opined that Plaintiff was "age appropriate" in the functional domains of interacting and relating with others, moving about and manipulating objects, and caring for self.  Tr. at 296-97.  Dr. Woll did not express a level of functional impairment in the remaining domains.  Instead, for acquiring and using information the doctor noted that Plaintiff would be starting speech therapy later in the week; for attending and completing tasks, the doctor noted merely that Plaintiff "cries"; and for health and physical well-being, that Plaintiff had delayed with speech and milestones and that Child Link services were due to begin, and that he gets rashes and is treated with "hydrocortisone type cream"  Id. at 295-96, 298.[8]

On July 28, 2017, Plaintiff attended an early intervention evaluation at Child Link. Tr. at 301, 436.  The evaluator noted that Plaintiff was two years of age, that Spanish was the primary language in his home, and that he had attended daycare since February 2017 where the teacher used both Spanish and English.  Id. at 301, 311.  Plaintiff's mother voiced concerns about Plaintiff's communication and behavior, reporting that he bites and scratches teachers and his peers and has tantrums when he cannot get his way.  Id. at 305, 312.  He reportedly used a few single words and pointed to get attention, made dinosaur roar sounds, and inconsistently followed simple directions.  Id. at 311.  The

---

[8]Hydrocortisone is a steroid medication used to treat many different conditions, including skin conditions.  See https://www.drugs.com/hydrocortisone.html (last visited Jan. 10, 2023).

evaluator completed an Ages and Stages Questionnaire ("ASQ-SE") which suggested concerns in the areas of social-emotional development, and noted reports that Plaintiff has difficulty sharing, taking turns, and communicating his needs with clearly understood words.  Id. at 312.  Plaintiff's mother reported that Plaintiff "can be . . . very calm and attentive during one on one interaction with . . . new adults," and the evaluator observed that Plaintiff "was able to play with each activity presented to him today without difficulty."  Id.  The evaluator opined that Plaintiff had no delay in his cognitive, physical, or adaptive development, a 52% delay in communication development, and a 25% delay in social and emotional development.  Id. at 316.  The evaluator concluded that Plaintiff was eligible to receive early intervention services, and thereafter he received support services, including speech therapy twice per week at his daycare.  Id. at 317, 398, 401.

On August 16, 2017, as part of the initial disability determination, Catherine Smith, M.D., reviewed Plaintiff's medical records and assessed his impairments of ADHD, asthma, and a speech and language impairment.  Tr. at 75-78.  Dr. Smith opined that Plaintiff's impairments, alone or in combination, did not met or medically equal the Listings.  Id. at 77.  Regarding the six domains of functioning, Dr. Smith opined that Plaintiff had no limitation in acquiring and using information, attending and completing tasks, moving about and manipulating objects, and caring for oneself, and less than marked limitation in interacting and relating with others and health and physical well-being.  Id. at 77-78.  Therefore, the doctor concluded that Plaintiff did not functionally equal the Listings.  Id. at 78.

On October 4, 2017, records from Esperanza indicate that Plaintiff "seemed to be making progress" with speech therapy at daycare, although his mother had difficulty affording daycare. Tr. at 395. Plaintiff's grandmother (who was visiting from Puerto Rico "for a few months") reported that Plaintiff was speaking more and "can ask for many things that he wants or needs," and that she had been working with him, especially by reading books together. Id. at 400, 401. She expressed concern with Plaintiff's aggression, tantrums and hyperactivity, and explained that the primary triggers for tantrums were taking something from Plaintiff or preventing him from taking something from someone else. Id. at 400. She denied having concerns about Plaintiff's behavior at school and said that his behavior issues are more present at home. Id. at 400, 401 ("[H]is behavior has not been problematic in school setting."). The Esperanza providers reviewed ways to help Plaintiff calm down at home. Id. at 401.

On October 12, 2017, an update note from Child Link indicates that Plaintiff continued to fight with his brothers, have tantrums and bite others, and that he said about ten words ("me, you, jump, curse words"). Tr. at 459 (part of the July 2, 2018 Child Link reexamination). On March 2, 2018, Child Link notes indicate that Plaintiff spoke phrases of up to three words at daycare and up to two words at home, and that "[h]is behavior at daycare has improved a great deal since services started." Id. at 464. On April 20, 2018, Plaintiff's mother reported no change in Plaintiff's behavior and that he had recently bitten a child, whereas the Child Link provider noted reports from daycare staff "that he generally behaves very well there, following directions, accepting redirection." Id. at 459.

On April 27, 2018, a developmental screen at Esperanza indicates that Plaintiff knew about fifteen words and could combine about three words at a time, follow two-part commands, name body parts, and understand words such as cold, tired and hungry. Tr. at 409. He could pretend play, parallel play, help with simple tasks, dress, wash/dry hands, and brush his teeth. Id. On July 5, 2018, the Esperanza provider indicated that "Plaintiff continues to display behavioral challenges, but is receiving the necessary support to address concerns through Child Link." Id. at 412. His medications were listed as Ventolin, hydrocortisone, and Minerin cream. Id. at 228, 408.[9]

On July 20, 2018, Elwyn Inc. ("Elwyn") performed an initial evaluation of Plaintiff on referral from Child Link. Tr. at 475-93.[10] The evaluation was attended by Plaintiff, his mother, a regular education teacher, and a bilingual speech language pathologist. Id. at 477, 485. Plaintiff demonstrated joint attention with evaluators, responded to simultaneous verbal and gestural commands in English and Spanish, followed three verbal commands without cues in Spanish, and followed one-step directions. Id. at 484, 485. He produced five words spontaneously including single words and one phrase. Id. at 485. He did not understand numerical or size concepts,

---

[9]Minerin cream (generic lanolin) is a topical emollient used as a moisturizer. See https://www.drugs.com/topical-emollients.html (last visited Jan. 10, 2023).

[10]The Evaluation Report indicates that the date of the evaluation is "Not Applicable," followed by a notation that the evaluation was for an "Infant/Toddler only." Tr. at 475. However, Elwyn received permission to evaluate Plaintiff on July 20, 2018, see id., and the Summary of Evaluation Results indicates that the date of evaluation was July 20, 2018. Id. at 490. In any event, the Evaluation Report was sent to Plaintiff's mother on August 15, 2018. Id. at 475.

yes/no questions, or "wh-" questions (who, what, when).  Id.  Plaintiff was determined to be eligible for services from Elwyn.  Id. at 491.

The record does not contain any further treatment or evaluation of Plaintiff for the period between July 2018 and the ALJ's March 2019 decision.

### C.   <u>Other Evidence</u>

Plaintiff's mother appeared on Plaintiff's behalf at the December 11, 2018, during which she was advised of her right to representation but elected to proceed without representation.  Tr. at 55-57.  She testified that Plaintiff likes going to daycare but argues with the children.  Id. at 62.  His teachers report that he climbs on tables and scratches or hits other children, including instances where he hit a child who had struck him and hit a teacher with a block, and one time where he was suspended after hitting a teacher.  Id. at 62-63.  Plaintiff gives kisses but also gets angry, throws things, and likes to climb on things.  Id. at 63, 65.  He can only play with other children for about five minutes before hitting or yelling at them and taking their toys.  Id. at 66.  He does not like to have clothes on.  Id. at 67.  Plaintiff's mother wanted Plaintiff to see a psychologist because of his hyperactivity, but they were told they had to wait until Plaintiff was five years of age.  Id. at 65.

Plaintiff's mother testified that Plaintiff received speech therapy at Elwyn.  Tr. at 63-64.  She cannot understand what Plaintiff says when he speaks English and can understand "[s]ome things" when he speaks Spanish.  Id. at 65.  He can say the ABC's and count up to ten if you get it started for him.  Id. at 67.  He likes to play with little cars and watch cartoons, id. at 64, and when asked how long Plaintiff can play with his cars

and watch cartoons without getting bored, Plaintiff's mother said, "The whole day." Id. at 68.

Plaintiff's mother's testimony is generally consistent with the information contained in function reports. Tr. at 173-81. For example, in a May 18, 2017 Function Report for children age one up to their third birthday, Plaintiff's mother indicated that Plaintiff could be understood "[s]ome of the time," but "[h]ardly ever" by people who do not know the child well. Id. at 173, 175. She checked boxes indicating that Plaintiff has difficulty using one or more words to ask for toys, food, or people, using "I" or "me" in reference to self, and listening for at least five minutes to stories being read. Id. at 176. He plays next to other children but not with them. Id. at 178. On a form entitled "Disability Report – Appeal," which Plaintiff's mother completed by hand and dated September 16, 2017, id. at 206, she indicated that there had been no change since she last completed a disability report. Id. at 199.

### D.   **Listing 111.09**

Plaintiff first argues that the ALJ's opinion is not supported by substantial evidence because the ALJ failed to find that Plaintiff's speech impairment satisfied the criteria of Listing 111.09, entitled "Communication impairment." Doc. 24 at 3-10. Defendant counters that this aspect of the ALJ's opinion is supported by substantial evidence. Doc. 25 at 9-11.

At step three of the five-step sequential process, Plaintiff bears the burden of showing that he meets a Listing. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). Moreover, Plaintiff must meet all of the specified medical criteria of the Listing in

14

question.  Sullivan, 493 U.S. at 530.

Listing 111.09 provides as follows:

> 111.09  *Communication impairment*, associated with
> documented neurological disorder and one of the following:
> A.  Documented speech deficit that significantly
> affects . . . the clarity and content of the speech; or
> B.  Documented comprehension deficit resulting in
> effective verbal communication . . . for age; or
> C.  Impairment of hearing . . . .

20 C.F.R pt. 404, subpt. P., app. 1, § 111.09.  Thus, Listing 111.09 requires a

"documented neurological disorder" and either a documented speech deficit, a

documented comprehension deficit, or a hearing impairment.  Id.

In addressing whether Plaintiff meets or medically equals Listing 111.09, the ALJ

stated:

> [Plaintiff] does not meet listing 111.09 for
> communication impairments because the record does not
> establish a documented speech deficit that significantly
> affects the clarity and content of the speech, a documented
> comprehension deficit resulting in ineffective verbal
> communication for age, or an impairment of hearing. . . .

Tr. at 18.  Additionally, following a narrative summary of the medical record, the ALJ

found that Plaintiff's does not have an impairment or combination of impairments that

functionally equals a Listing, concluding that he has no limitation in the domain of

moving about and manipulating objects and less than marked limitation in the other five

domains of functioning.  Id. at 23-29.  With respect specifically to the domain for

acquiring and using information, the ALJ acknowledged Plaintiff's expressive and

receptive speech delays, but noted that Plaintiff was making progress in speech therapy,

could carry out one-to-two step instructions, could sometimes be understood when speaking, could identify body parts, and could recite the alphabet and count to ten with prompting.  Id. at 24.

The record supports a finding that Plaintiff has a speech delay, but also supports the ALJ's determination that the delay does not meet or equal the Listing.  As the ALJ noted, Plaintiff could repeat the alphabet and count to ten if prompted, see tr. at 67, and in July 2017 -- before starting speech therapy -- he responded to his name, had age-appropriate receptive language, and was below age expectations in expressive language. Id. at 282.  At that time, Dr. Wells diagnosed a moderate speech disorder and opined that Plaintiff had no more than moderate limitations, with a fair prognosis.  Id. at 282, 283, 284-87.  Also in July 2017, Dr. Woll noted that Plaintiff exhibited age-appropriate behavior, related in an age-appropriate way, and appeared to have a normal attention span.  Id. at 292.

Plaintiff argues that the ALJ erred by considering evidence from July 2017 because neither doctor heard Plaintiff speak (due to being sick and crying) and he had not yet started speech therapy.  Doc. 24 at 4.  Nevertheless, both doctors made their assessments after listening to his mother's reports regarding Plaintiff's speech and behaviors, and after examining Plaintiff.  Moreover, the ALJ considered the entire record, including evidence showing that Plaintiff made progress with intervention services after July 2017.  Tr. at 21.  For example, a progress update from April 20, 2018, indicated that Plaintiff said phrases up to three words at daycare (id. at 464) and a developmental screen performed on April 27, 2018, indicated that Plaintiff knew about fifteen words and could

16

combine about three words at a time, follow two-part commands, name body parts, and understand words such as cold, tired and hungry (id. at 409).  Pediatric notes from July 2018 reflect that Plaintiff was "making progress with speech therapy" (id. at 395, 409), "speaking more" (id. at 400), and could "ask for many things that he wants or needs" (id. at 401).  Notably, no medical provider or reviewer opined that Plaintiff met or equaled a Listing, and none found greater than moderate functional equivalency in any domain of functioning.

Even if the record as a whole supported limitations that satisfied Listing 111.09(A) or (B), remand would not be warranted because Plaintiff does not satisfy the first required element of the Listing, namely the presence of a "documented neurological disorder."  20 C.F.R pt. 404, subpt. P., app. 1, § 111.09.  Although Plaintiff argues that he was not eligible for neurological testing due to his age, Doc. 24 at 3-4, Plaintiff provides no evidence or authority to support this argument, nor do the regulations support an age limit.  To the contrary, the regulations provide that in order for a child to meet Listing 111.09(A) or 111.09(B), "we need documentation from a qualified professional that your neurological disorder has resulted in" either a speech deficit or a "comprehensive deficit that results in ineffective communication for your age," 20 C.F.R. pt. 404, subpt. P, app. 1, § 111.00(K)(2)-(3), with no indication of an age at which a neurological disorder may be tested or diagnosed.

For these reasons, I find that the ALJ's consideration of Listing 111.09 is supported by substantial evidence.

E.    **Listing 112.11**

Plaintiff also argues that the ALJ's opinion is not supported by substantial

evidence because the ALJ failed to find that Plaintiff's ADHD satisfied the criteria of

Listing 112.11, entitled "Neurodevelopmental disorders."  Doc. 24 at 10-12.  Defendant

counters that this aspect of the ALJ's opinion is supported by substantial evidence.  Doc.

25 at 11-16.

Listing 112.11 provides as follows:

> 112.11  *Neurodevelopmental* disorders . . . for children
> age 3 to attainment of age 18, satisfied by A and B:
> A.  Medical documentation of the requirements of
> paragraph 1, 2, or 3:
> 1.  *One* or both of the following:
> a.  Frequent distractibility, difficulty sustaining
> attention, and difficulty organizing tasks; or
> b.  Hyperactive and impulsive behavior (for example,
> difficulty remaining seated, talking excessively, difficulty
> waiting, appearing restless, or behaving as if being "driven by
> a motor").
> 2.  Significant difficulties learning and using academic
> skills; or
> 3.  Recurrent motor movement or vocalizations.
>
> AND
>
> B.  Extreme limitation of one, or marked limitation of
> two, of the following areas of mental functioning . . .:
> 1.  Understand, remember, or apply information. . . .
> 2.  Interact with others. . . .
> 3.  Concentrate, persist, or maintain pace. . . .
> 4.  Adapt or manage oneself. . . .

20 C.F.R pt. 404, subpt. P., app. 1, § 112.11.[11]

---

[11]Plaintiff contests the ALJ's finding as to Listing 112.11(A)(1) and not (2) or (3).
See Doc. 24 at 10-11.

In addressing whether Plaintiff meets or medically equals Listing 112.11, the ALJ stated:

> [Plaintiff] does not meet or equal listing 112.11 for neurodevelopmental disorders because the record does not establish an extreme limitation or 2 marked limitations of areas of mental functioning in combination with (1) either (a) frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or (b) hyperactive and impulsive behavior; (2) significant difficulties learning and using academic skills; or (3) recurrent motor movement or vocalization.

Tr. at 19.  As discussed in the previous section, the ALJ also found that Plaintiff did not functionally equal a listing based on the six domains of functioning.  Id. at 23-29. Although the six domains of functioning do not precisely track with the four areas of mental functioning identified in 112.11(B), there is sufficient overlap such that the ALJ's findings as to the domains of functioning encompass the areas of mental functioning in the Listing.

Plaintiff argues that his ADHD causes him to have "severe" limitations in areas of functioning that satisfy 112.11(B).  See Doc. 24 at 11.  I disagree.  Although the record supports a finding that Plaintiff has problems identified in 112.11(A), particularly distractibility and hyperactivity, the record as a whole supports the ALJ's determination that Plaintiff failed to establish the existence of an extreme limitation or two marked limitations of areas of mental functioning as required by 112.11(B).  In making this determination, the ALJ cited to Plaintiff's treatment and early invention records, the opinion evidence from treating and consultative examiners, and the testimony of Plaintiff's mother.  See Jones v. Barnhart, 364 F.3d 501, 506 (3d Cir. 2004) (ALJ need

not use any particular format and decision should be read "as a whole").  Notably, evidence from all of these sources support the ALJ's determination.

For example, treatment records show that in July 2017 -- before intervention services began -- Dr. Wells noted that Plaintiff was somewhat playful despite being sick with a fever, made eye contact, and smiled while playing, with no deficits in attention or concentration.  Tr. at 281, 283.  Dr. Wells diagnosed Plaintiff with mild ADHD and a moderate speech disorder, and opined that his prognosis was fair.  Id. at 283.  Similarly, Dr. Woll found in July 2017 that Plaintiff exhibited age-appropriate behavior, related in an age-appropriate way, and appeared to have a normal attention span.  Id. at 292.  Once intervention services began, Plaintiff's behavior improved; in April 20, 2018, a progress report characterized Plaintiff's behavior as having "improved a great deal since services began."  Id. at 464.  Additionally, as previously summarized, no medical provider or consultative examiner assessed Plaintiff with greater than moderate limitations in any domain of functioning.  Finally, although Plaintiff's mother and grandmother both expressed concern about Plaintiff's behavior, his grandmother stated in October 2017 that "his behavior has not been problematic in school setting," id. at 401, and his mother testified that he gives affection and likes to play with little cars and watch cartoons, which he could do "[t]he whole day."  Id. at 63, 64, 68.  Taken together, this evidence does not support the existence of an extreme or marked limitations of mental functioning.

Plaintiff argues that the ALJ "totally disregarded" Plaintiff's ASQ-SE score and the details by the evaluators."  Doc. 24 at 10-11.  However, an ALJ is not required to cite every medical record.  Sutherland v. Comm'r Soc. Sec., 785 F. App'x 921, 928 (3d Cir.

2019) ("we do not expect the ALJ to make reference to every relevant treatment note")

(quoting Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001)).  In any event, here the

ALJ specifically discussed the July 28, 2017 Child Link evaluation that contained the

ASQ-SE score suggesting delays in Plaintiff's social and emotional development, and

noted reports within that evaluation regarding instances of Plaintiff's aggressive behavior

with peers and teachers.  Tr. at 21 ("[Interventionists at daycare] reported that [Plaintiff]

was generally well behaved, following instructions and accepting redirection; however,

they noted that he occasionally hit other children.").  While the ALJ did not cite to the

ASQ-SE score specifically, under the circumstances "the ALJ's mere failure to cite

specific evidence does not establish that the ALJ failed to consider it."  Phillips v.

Barnhart, 91 F. App'x 775, 780 n.7 (3d Cir. 2004) (citation omitted).

Plaintiff also argues that the ALJ failed to take into consideration the ratings made

by Plaintiff's teachers and did not give the teachers' and his mother's complaints "their

proper weight."  Doc. 24 at 12.  As previously mentioned, the ALJ thoroughly discussed

each aspect of the record, and indeed Plaintiff does not identify any specific school or

teacher rating or concern that the ALJ failed to address.  Moreover, the governing

regulations did not require the ALJ to "weigh" any evidence in this matter, medical or

otherwise.[12]  To the extent Plaintiff seeks to have this court re-consider the evidence, that

------

[12]The opinions of school officials, teachers, and Plaintiff's mother do not
constitute medical opinions for purposes of the regulations, but even if they did, the ALJ
was not required to accord "weight" to any such opinion.  Effective March 27, 2017, the
Social Security Administration amended the rules regarding the evaluation of medical
evidence, eliminating the assignment of weight to any medical opinion.  See Revisions to
Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).

is not the court's role.  See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir.

2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual

determinations.") (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

        For all the aforementioned reasons, I find that the ALJ's consideration of Listing

112.11 is supported by substantial evidence.

**V.      CONCLUSION**

        The ALJ considered the entire record in evaluating the criteria for Listings 111.09

and 112.11, and I find that the ALJ's step-three determination is supported by substantial

evidence.

        An appropriate Order follows.

_____
Because Plaintiff applied for benefits in May 2017, the new regulations apply to the
consideration of medical evidence.